Shackelfoed, J.,
delivered the opinion of the Court.
In 1855, the heirs of Thomas Mason filed their hill in the Chancery Court of Bedford, against Huida Mason, the widow, and others, to have dower assigned the widow, and the balance of the land sold. At the August Term, 1856, a decree was rendered. The balance of the land, after the assignment of dower, was directed to be sold, and was sold by the Master. The complainant, William Wood, became the purchaser of lot No. 3, containing fifty-six acres, at ¡$3389, and exe *252 cuted his notes for $1694 each. At the maturity of the first note, judgment was rendered against Wood, and his securities on it. Complainant filed his bill, and amended bill, enjoininig the collection of the judgment, and asked to be relieved from the purchase. It appears the heirs of Thomas Mason had no title to the one-seventh of the land sold. After the sale by the Clerk and Master, a bill was filed in the Chancery Court of Coffee, by the heirs of Ezekiel Eobinson, agains the heirs of Thomas Mason and William Wood, the complainant; and Mary E. Robinson, a minor, and one of the heirs of Ezekiel Robinson, recovered, by a decree of that Court, the undivided one-seventh of the tract of land sold to complainant. The Chancellor refused to discharge the complainant from his contract; directed an inquiry, by the Master, of the value of the interest recovered by Mary Robinson, which appears was $460, with the interest; credited the notes of the complainant with the same, and gave a decree against him and his securities, for the balance of the purchase money; from which decree the complainants have appealed to this Court.
The question presented for the determination of the Court, whether a purchaser, contracting for the entirety of a tract of land, can be compelled to take an undivided aliquot part of it. This question has been before this Court in several cases. In 5 Haywood, Newman vs. McLin, 241, it was holden, if the vendor could not make title to a part of the land conveyed, the vendee could rescind the contract, and recover the purchase money paid.
*253 In the case of Reed vs. Nael, 9 Yer., 286, it was held, if the vendor had an unquestionable title to a part of the land, the vendee could not he held to accept a part performance of the contract, and the Court would not decree a specific performance of it,, unless the title was clearly good, and free from all incumbran-ces. This principle is well settled, upon authority: 2 Bibb., 410; 1 Dis. Rep, 281. In the case of Gallowary and Pillow vs. Bradshaw, 5 Sneed, 71, the purchaser bought two lots, as a whole, and the title to one failed. The Court was erf opinion, it was at the option of the vendee to rescind the contract. The question has been frequently before the English Courts, and the principle may now be regarded as settled, a purchaser of an interest will not be compelled to take an undivided share of an estate. Also, Sen vs. Day, 218, 4-227, 3-29. This principle was settled, in the case of Repburn vs. -, 5 Cranch, 276. In this case, the Court held, the vendee might be compelled to complete the contract, when the quantity of land proved to be less than had been imagined; but not when there was a failure of title to a part of the land.
In Titeles’ Select Cases, 595, it was decided, the vendor could not be compelled to accept a part of the land purchased, with compensation, for the failure to convey the residue. See 2 Equity Leading Cases, Seton vs. Stade, 2 Story’s Equity, par. 778.
In the case under consideration, to compel the complainant to execute the contract, would make him a tenant in common, against his will, with a stranger. The owner of the one-seventh of the estate, would have *254 the right to enter upon the land, use and enjoy it. If complainant attempted, at any time, to prevent the entry, he would subject himself to suit. If improvements were placed on the lands, it could, at any time, be sold for a division; no man desiring to make improvements on land, would do so, with an outstanding title to an undivided interest. It was not what the ■ purchaser contracted for; and, according to the principles controlling a court of equity, a purchaser can■not be compelled to complete his purchase, to the extent of the title, and receive compensation for the failure in part. Courts of Chancery have no power to make contracts between parties. They may enforce or annul them, but cannot impose terms not contemplated or designed by parties contracting. The discretion of the Chancellor is controlled by well defined sales of land, and the duty of Courts is to enforce or annul contracts — not , to make them. In this cause, there being a superior outstanding title to the one-seventh of the land purchased by the complainant, he cannot-give a good and sufficient title.
The decree of the Chancellor is reversed. The purchase, by the complainant, of the fifty-six acres of -land, at the Master’s sale, is set aside. The complainant will be charged with the rents and profits of the land, if he retained possession, and allowed for permanent improvements. A lien is also 'given him for any money he may have' paid on the purchase.
The cause is remanded to the Chancery Cpurt of Bed-ford, for an account.